# William Thomas

### *v.*

# The County of Morgan *et al.*\*

1.  Subscription *to stock of a railroad company by a county—application of bonds issued therefor.*  Where the bonds of a county, issued upon a subscription of the county to the stock of a railroad company, were delivered to the bankers of the company, upon the stipulation between the county authorities and the company, that they were to be applied in payment for work done upon the road within the county and not elsewhere, it was *held,* the sense of the stipulation, in view of its purpose, was, not that those identical bonds should pay for work done in that county, but it was, if work was done in the county, the bonds should be delivered to the company.

2.  Same—*by whom the condition may be performed.*  Nor is it essential, in such case, in order to create the obligation of the county to deliver the bonds, that the work should be done by the company to the stock of which the subscription was originally made, and with which the stipulation was entered into, but if the work was done by the successors of that company, endowed with all the rights, privileges and franchises of the latter, that would be a substantial performance of the condition upon which the bonds were to be delivered.

3.  Same—*rights of creditors of the original company, and of their assignee, in respect to such bonds.*  And where the original company had incurred a debt on account of work done upon the road, and in payment thereof gave to their creditor an order upon the custodian of the bonds for a sufficient amount of them to satisfy the same, which order was sold and assigned to a third person, but, by reason of there having been no work done upon the road within the county, there was no obligation to deliver any bonds upon such order, it was *held,* that if work was subsequently done within the county by the successors of such original company, so as to comply with the condition upon which the bonds were to be delivered, then the order issued by the original company would operate as an equitable transfer to the holder thereof, of so much of the county subscription, represented by the bonds, as was embraced in the order.

4.  Chancery—*remedy of such assignee—and herein, of a creditor's bill.*  In such case, where the custodian of the bonds, under the direction of the county authorities, refused to deliver the bonds called for by the order of the railroad company, the holder of the order has his remedy in chancery to compel their delivery to him, without first proceeding at law against the

---

\*This cause was decided as of the January term, 1871, but did not come to the Reporter's hands in time to be placed in its order with the other cases of that term.

company as for a debt due from them to him as the assignee of their order. A bill filed for such purpose would not be regarded as a creditor's bill, nor in the nature of one.

5. SAME—*where a fund is under the control of a court.* Moreover, where the bonds sought to be reached have been, by the action of a court of chancery, placed in the hands and custody of a trustee, there to remain until the further order of the court, a third person, not a party to the suit in which the order was made so placing the custody of the bonds, but entitled to them, can only reach them by original bill.

6. PARTIES *in chancery.* In a suit by such holder of the order given for the bonds by the original railroad company, to compel the delivery of them by the custodian, such original company, having ceased to exist and all its rights and franchises vested in its successor, is not a necessary party to the bill.

7. FORMER ADJUDICATION—*whether a bar.* Where a suit was instituted for the purpose of settling conflicting claims for the county bonds, to which the holder of the order of the railroad company was a party, and it was determined therein that he was not entitled to the bonds under the order because at that time the condition upon which the bonds were to be delivered to the company—the doing of work on the road within the county—had not been performed, it was *held,* the adjudication in that suit, adverse to the holder of the company's order, was not a bar to a subsequent suit by him to enforce his claim of the same character, on the basis that after that adjudication the company did do work upon the road within the county, and thereby performed the condition upon which the bonds were deliverable.

8. CHANCERY—*wasting of a trust fund.* Where a trust fund in the custody of the court is about to be wasted and misappropriated, it is the duty of the court to prevent it.

APPEAL from the Circuit Court of Morgan county.

Mr. WILLIAM THOMAS, *pro se.*

Mr. ISAAC L. MORRISON, for the county of Morgan.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The prominent facts of this case, as we gather them from the statement and brief of appellant, and not controverted by appellee, are substantially as follows:

A charter had been granted by the general assembly of this State, under which the Illinois River Railroad Company was

organized, and commenced the construction of their road. The county of Morgan subscribed $50,000 in county bonds to the stock of this company, payable in instalments, as required by the board of directors of the railroad company. These bonds were printed, signed, and ready to be delivered. They bore date September 10, 1857, and were deposited for safe-keeping with Brown & Elliott, bankers, of Jacksonville.

The company contracted with the firm of Allen & McGrady to grub, grade and tie the road, and, for the work to be done in Morgan county, the company agreed to pay, and the contractors to receive, these bonds. The facts in relation to this contract were reported by the president of the company to the county court of Morgan county. Thereupon, the court ordered the delivery of the bonds, as the president understood, unconditionally, but, as the court contended, to be delivered in payment of work done in Morgan county. Acting upon his understanding of the arrangement, the president of the company, on the 2d of April, 1859, gave orders on the bankers, Brown & Elliott, in favor of Allen & McGrady, the contractors, for two bonds of $2000 each, on account of work executed by them, or on account of a tie contract.

These orders were sold and endorsed by Allen & McGrady to William Thomas, the complainant and appellant, who, on presenting them to the bankers, was informed by them that the county judge had notified them not to deliver any bonds except in payment for work on the road in Morgan county. This was the first information appellant had that the county claimed there was any condition imposed upon the company in regard to the delivery or use of the bonds.

To obtain funds to purchase iron for the road, the company issued coupon bonds, and, to secure their payment, executed a deed of trust to parties in the city of New York, bearing date November 1, 1858, upon the road and its appurtenances. The road was completed from Pekin to Virginia, in the county of Cass; and the line surveyed from the last named point to

31—59TH ILL.

Jacksonville, in Morgan county, but not finally located, in 1860.

In October and November, 1862, certain parties who had executed contracts for ties for the road, obtained judgments against the company in Mason and Peoria counties, upon which executions were issued and returned *nulla bona*.

While these actions were pending, but before judgments were obtained, the company failing to pay the interest on its bonds secured by this deed of trust, the trustees, in July, 1862, with the consent of the company, took possession of the road, placed their agent in charge, and commenced running and operating it for the use of these bondholders. Everything was surrendered by the company to the trustees except the bonds now in controversy.

The judgment creditors in Peoria and Mason counties commenced proceedings in garnishment against Brown & Elliott, who held the bonds, claiming the right to subject them to the payment of their judgments. The trustees under the deed of trust claiming that the bonds had passed to them under the deed, and this appellant claiming he was entitled to $4000 of them, in kind, and the president of the company, R. S. Thomas, claiming the right to a sufficient number of them to pay an indebtedness to him which the company had formally acknowledged, and the county denying the rights of all these parties as claimed by them, Brown & Elliott, to relieve themselves of all responsibility, filed their bill of interpleader in the Morgan circuit court against all these parties, that their respective claims might be adjudicated, and to obtain a decree directing the manner in which these bonds should be appropriated. All the parties appeared and interpleaded, and it was the judgment of the circuit court that the railroad company had no right to these bonds, except to pay for work done on the road in Morgan county, and the fact being admitted that no work had been done in that county, except surveying one or more lines, dismissed all the bills of interpleader; from which decree

the judgment creditors and R. S. Thomas, and the complainant, appealed to this court.

While this bill for interpleader was pending in the circuit court, these bonds were, by order of the circuit court, deposited with the banking house of M. P. Ayres & Co., there to remain subject to the further order of the court.

The directors of the company held no meeting after the road was surrendered to the trustees, nor did they perform any act, or claim to do any, as a corporation, thereafter.

On the 11th of June, 1863, the general assembly of this State passed an act to incorporate the Peoria, Pekin & Jacksonville railroad, providing, among other things, that the corporation thereby created should have, possess, and be vested with, and might use, enjoy and exercise any or all of the corporate powers, privileges, rights, munities and franchises theretofore given or granted to the Illinois River Railroad Company under or by virtue of any act or acts of the general assembly of this State.

This corporation, having possession of the road by the purchasers under the deed of trust, proceeded to and did complete the road from Virginia to Jacksonville.

This court, on the appeal of Thomas and others, 39 Ill. 496, held, on the facts then before it, that Thomas, the appellant in this suit, was not entitled to the bonds, they being issued on the condition that they should be paid out only for work on the road done in Morgan county, and that he took the orders with notice of this condition.   As to the judgment creditors, it was held they could pursue the bonds, and remanded the cause, upon which, the circuit court decreed in favor of these creditors.   Their claims amounted, in the aggregate, to $7008.10, and by the decree, on the basis that the market value of the bonds was fifty cents on the hundred, appropriated $17,520.20 of the bonds to satisfy the decree— the balance of the bonds to remain with M. P. Ayres & Co.

It is alleged in the bill that, at the time of this decree, these bonds were at par.

The amount of bonds remaining with Ayres & Co. was sixty-five, each for $500.

It is alleged in the bill that, in order to secure the passage of this act of June 11, 1863, and while suits were pending in the circuit court to subject these bonds to the claims of creditors then suing, two of the three trustees of the Illinois River Railroad Company, namely, Lucius Hopkins and Alexander Steedwell, entered into and signed this stipulation: "The undersigned, trustees in the first mortgage of the Illinois River Railroad Company, being desirous to obtain a charter for incorporating the purchasers of said railroad, do hereby stipulate that nothing in the act of incorporation which may be passed by the legislature, shall in any way affect the title or right of the trustees or bondholders, or any creditors of said road, or any person having claims or rights to the whole or any part of $50,000 of Morgan county bonds, and now in litigation in the circuit court of Morgan county, but the right and title to said bonds shall be left to be decided in the suit now pending in the Morgan county circuit court."

This stipulation is dated June 5, 1863. The suit then pending, as we understand, was the case decided in 39 Ill. *supra.*

It is alleged in the bill that the board of directors of this company never met as a board for the transaction of business after the meeting in July, 1862, and by their action at that time all the property, franchises and rights of the company were transferred and assigned to trustees, and nothing remained either of power or authority on which the board could act; that by the subsequent act of June 11, 1863, incorporating the Peoria, Pekin & Jacksonville Railroad Company, all of the rights, powers and franchises of the Illinois River Railroad Company were vested in the company incorporated by that act; that by the action of the board in July, 1862, taken in connection with the action of the general assembly, the Illinois River Railroad Company was dissolved, and ceased to have any legal existence.

The bill alleges that, after the decision of this court, in 39 Ill. 496, in 1866, the general creditors of the Illinois River Railroad Company commenced actions at law on their several claims, to which actions B. S. Prettyman, assuming to be the vice president of that company, entered his appearance, waived service of process, and either confessed or permitted judgments to be entered against the company, upon which executions were issued and returned "*nulla bona.*" These parties, then, in September, 1867, filed their bill in chancery in the Morgan circuit court, making the Illinois River Railroad Company, the county of Morgan, and M. P. Ayres & Co., defendants, the object and scope of which bill was to subject these bonds to sale to pay their judgments. To this suit appellant was not made a party, nor did he have any notice of the proceeding, although, as is alleged in this bill, those complainants knew he was interested in the question of the disposition of these bonds, and it is alleged there was no allegation in their bill that the road had been constructed in Morgan county, or that their claims were for work done on the road in that county.

To this bill, it is alleged the same B. S. Prettyman appeared as the attorney of the railroad company, and consented to a decree, which was entered in November, 1867.

It is alleged these judgments amounted in all to about $40,-000, and that, by an agreement between the county and these creditors, the county paid to their attorney $6000 in cash and $6360 of the bonds, in full satisfaction; and it is alleged the record was so made up as to show that all the bonds on deposit with Ayres & Co. were used in making this payment, and that Ayres & Co. surrendered the bonds as required by the decree.

The decree is as follows: That the Morgan county bonds on deposit with M. P. Ayres & Co., to-wit, $32,500 in nominal value, being sixty-five in number, from number 1 to number 7 inclusive, and from number 43 to number 100 inclusive, be applied, so far as is necessary, to the payment of the complainants' judgments, and interest, as follows:

A list then follows of the names of the judgment creditors, and amounts due them respectively.

Ayres & Co. were required to deliver these bonds to the special master appointed by the court. The decree further provided that, unless the county of Morgan and the judgment creditors agree that these bonds be received in payment at an agreed price, the special master was directed to sell them, or so many of them as might be necessary, for cash, at public sale, at the door of the court house in Jacksonville, first giving notice of the time, terms and place of sale by publication in the "Daily Jacksonville Journal" three weeks in succession, and that he apply the proceeds to the payment of the costs of the suit and the sale, and then to the payment of the claims of complainants—the surplus, if any, to be reported to the court. And it was further provided by the decree, if the county should agree with the creditors to take the bonds at an agreed price without sale, then the special master was required to deliver so many of the bonds *to* the creditors which, at the agreed price, would pay the judgments, and report the surplus, if any, to the court, and the special master was required to report generally.

It is further alleged in the bill that, at a subsequent term of the court, the special master reported that, by the agreement between the county and the creditors, he had delivered the bonds to the solicitor of the creditors in full satisfaction of their judgments.

It is then alleged by complainant that, when he heard of these proceedings in April, 1868, and also that the Peoria, Pekin & Jacksonville Railroad Company was about to commence work on the road from Virginia to Jacksonville, and being also informed that the attorney for said creditors had not paid over to them the bonds and cash paid to him, filed this bill containing the above facts, and prayed an injunction against the county to enjoin them from paying to these creditors what they had agreed to pay, and also praying the court to set aside the proceedings on the ground of fraud, and to cause

the county bonds to be returned to their former place of deposit.

To this bill the county, the judgment creditors, and all other persons known to have any interest in the fund, were made parties defendant.

In October, 1868, an amendment to the bill was filed, alleging that this company had commenced work on the road, and would probably complete the same to Jacksonville in a few months. And in August, 1869, by another amendment, it was alleged the road had been completed to Jacksonville.

To the bill, as amended, the county of Morgan appeared and put in a general demurrer, which was sustained, and the bill dismissed. No other parties appeared. The complainant appeals.

We have been thus particular in setting out the main facts of the case, as it is somewhat complicated.

Appellant insists that the decision of this court, in 39 Ill. *supra*, only settled the question as to the rights of the parties to that suit upon the facts then presented, but settles no question that might arise upon the expenditure of money in the construction of the railroad in Morgan county.

So far as this appellant is concerned, his right to any portion of these bonds was adjudicated adversely to him, on the ground, chiefly, that the contractors, from whom he received the order for these bonds, had done no work on this road in Morgan county, and that appellant, being a director of the company, had knowledge that these bonds would not be delivered except for work done in Morgan county. No question was made as to the *bona fides* of the transaction.

Appellant contends that, at the time this decision was made, in 1866, the Illinois River Railroad had ceased to exist, but if it had continued its existence, and constructed the road in Morgan county, he would have been entitled to the bonds.

This would seem to be a clear proposition. The liability of the county depending on the fact that work should be done in the county, when such work was done in the county the

liability would be absolute; and appellant, as assignee of the contractors, for value, would have an equity which ought to be enforced.

He now insists, inasmuch as the road has been constructed in the county by the successors of the first company, such construction, for all the purposes for which the stock was subscribed, is equivalent to its construction by the original company, and the county as much bound to deliver the bonds to the successor as it would have been in the first instance.

It is undeniable, that the moving cause for the subscription, the real motive, was the construction of the road in Morgan county. It did not matter to the county by what particular agencies the road should be made—it was sufficient that it was made. The stipulation must be construed with reference to its object and substance. The object was to secure the road in Morgan county. Had the company built the road out of its general assets, it is very certain they could have demanded the bonds. The sense of the stipulation is, not that these identical bonds shall pay for work done in Morgan county, but it is, if work is done in the county, the bonds shall be delivered. The fact that the road has been completed from Virginia to Jacksonville, is a substantial performance of the condition on which the bonds were issued, and the Allen & McGrady order for $4000 of them, drawn by the company, which has honestly come into the possession of appellant, operated as an equitable transfer of so much of the county subscription from the railroad company to appellant.

But it is insisted by appellees that appellant is not in position to demand the aid of a court of equity—if he has any remedy, it is complete at law. In this connection, they insist that appellant should first obtain a judgment at law against the Illinois River Railroad Company, issue an execution thereon, and have a return of *nulla bona;* that all this is indispensable, and without it a court of equity has no jurisdiction.

It is too well settled that, where the remedy is complete at law, equity will not interfere; and to be in a position to file a

creditor's bill, it is indispensable legal measures must be first exhausted. But this is not a creditor's bill, nor in the nature of one. Appellant does not claim to be a creditor of that company, but to have an equitable right to a certain fund which was pledged to that company, to be paid on a certain event; that, by the act of that company, he is the equitable assignee of a portion of this fund. And the further theory of the bill is, that the fund in question, by the action of the circuit court of Morgan county, is in the hands and custody of a trustee, there to remain until the further order of the court. That a fund so situated can be reached by original bill, and only in that way, is a proposition too plain for argument.

That a judgment should first be obtained against the railroad company is not necessary, and if it was, there are facts alleged in the bill sufficient to show that no process could be served on the company, they being, so far back as 1862, to all intents and purposes, a defunct corporation, having no organization and doing no corporate acts from that date. And this is an answer to the objection that this defunct company should have been made a party to the bill.

Upon the theory that these bonds are a trust fund in the custody of the court, it is the duty of the court to see that it is not wasted or misapplied, as the demurrer admits it has been, in the respects alleged in the bill of complaint.

It is not denied that the parties prosecuting that suit agreed to receive from the county, in full satisfaction of their claims, the sum of $6000 in cash and $6360 of these bonds. There were then in the hands of the custodian, Ayres & Co., bonds of the nominal value of $32,500. These were surrendered, by the custodian, to the solicitor of the complainants in that action, in discharge of an indebtedness of only $12,360. This, without explanation, is a wasting and misappropriation of the fund, which a court of chancery can and ought to correct.

As to the validity of the decree, we will not now undertake to decide. Independent of this question, there is, apparently, a surplus in the hands of the solicitor of these creditors, after

satisfying their claims, sufficient, if equitably administered, to discharge appellant's claim, if nothing shall hereafter be shown to the contrary, when the case goes to a hearing.

A portion of this fund seems to be in the hands of this solicitor, and it ought not to be wasted, but should be applied in part to the discharge of appellant's claim, if there be no superior claim; and the only way to effect this is by original bill. As appellant was not a party to the proceedings of 1867, in which the decree was made, he could not appeal from it. He has resorted to the only mode available to arrest a further misappropriation of the fund. These views are based, in some degree, upon the fact that the present organized railroad company assert no claim to any portion of this fund, but abide the stipulation set forth in the bill. And there is great propriety that this fund should be appropriated to the discharge of the liabilities of the defunct organization.

The remaining objection of appellee is, that the rights of appellant have already been adjudged in 39 Ill. *supra,* and can not be again litigated.

As we have said, the rights of appellant were passed upon in that case, as the facts then existed. Then no work had been done in Morgan county, and as that was a condition of the delivery of the bonds, it might be well claimed by the county that the condition had not been performed. The case is different now. The work having been completed in the county by the successors of the original company, appellant has an equitable right to have his debt against the company paid out of their assets.

The decree is reversed and the cause remanded, with leave to withdraw the demurrer and answer the bill.

*Decree reversed.*